```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF ALABAMA
                        SOUTHERN DIVISION

PORTER CAPITAL CORPORATION,    }
                               }
     Plaintiff,                }
                               }     CIVIL ACTION NO.
v.                             }     7:14-cv-0384-WMA
                               }
SOBCON CONCRETE COMPANY, INC., }
                               }
     Defendant.                }
```

**MEMORANDUM OPINION**

The above-styled matter comes to this court upon the objection of Porter Capital Corporation ("plaintiff" or "Porter"), to the memorandum opinion and order entered on October 9, 2013, by the Bankruptcy Court for the Northern District of Alabama, Western Division, as amended on February 14, 2014. As will hereinafter appear, these opinions were recast by the Bankruptcy Court as a "report and recommendation". The pertinent facts and procedural posture of the case are thoroughly and comprehensively recounted in the Bankruptcy Court's opinions, and will not here be repeated, except to the extent necessary to explain this court's reasons for overruling Porter's objection and for agreeing with the recommendation of the Bankruptcy Court that Porter recover nothing from Sobcon Concrete Company, Inc. ("defendant" or "Sobcon").

The controversy arose out of the voluntary bankruptcy of Rodney Haley, d/b/a Custom Steel ("debtor" or "Haley"), BK 11-70573. Haley was a steel manufacturer. He had a factoring agreement with Porter that, as factor, financed Haley's operation.

Porter filed a claim against Haley's bankruptcy estate, alleging that Haley had fraudulently breached the factoring agreement. Central to Porter's claim of fraudulent breach by Haley was its claim that the breach was occasioned by and/or was participated in by Sobcon, one of Haley's customers. While pursuing Haley, Porter filed an adversary proceeding in the Bankruptcy Court against Sobcon, seeking a money judgment against Sobcon for the same losses it allegedly sustained at the hands of Haley. Both claims involved disputed invoices sent by Haley to Sobcon. During the bankruptcy proceeding, Porter, pursuant to 28 U.S.C. § 157(c)(1), agreed that the Bankruptcy Court had jurisdiction over the Sobcon claim, just as it did over Porter's contention that its fraud claim against Haley was non-dischargeable. Porter's claim against Sobcon was more than simply "related to" the bankruptcy proceeding. Over a period of more than three years, Porter amended its claim against Sobcon four times, never challenging the Bankruptcy Court's right to decide its said claim against Sobcon.

On June 23, 2011, the Supreme Court of the United States decided *Stern v. Marshall*, 131 S.Ct. 2594 (2011), in which a five-justice majority concluded that a non-core proceeding in bankruptcy, even if "related to" a core proceeding, could not be finally adjudicated by a bankruptcy judge, who is not an Article III judge, even with the consent of the parties.

The question of the dischargeability of Porter's claim against Haley, and Porter's claim against Sobcon, were treated by the Bankruptcy Court, and by the parties themselves, as "inextricably intertwined" and as a single "case". They involved the same factual and legal issues. After lengthy discovery and a lengthy trial, the Bankruptcy Court rejected Porter's contention that its claim against Haley was non-dischargeable because of the debtor's fraud, and simultaneously, if only purportedly, found that Sobcon was not liable to Porter.

There has been no appeal from the final order denying Porter's right to pursue Haley post-bankruptcy. In other words, the finding of Haley's dischargeability is indisputably final and binding on all parties.

As stated, Porter's claim that Haley's debt to it was non-dischargeable was based upon its contention that a number of Haley's invoices to Sobcon were fraudulent. The Bankruptcy Court expressly found that Porter failed to meet its burden of proving that the disputed invoices were fraudulent. Porter spent much time and effort attempting to prove that Sobcon participated in Haley's unproven fraudulent conduct, either willfully or negligently. There was no direct contractual relationship between Sobcon and Porter out of which any duty by Sobcon to Porter would arise, although Sobcon did on occasion remit directly to Porter payments of Haley's invoices.

3

In its amended opinion of February 14, 2014, the Bankruptcy Court converted its purported finding of October 9, 2013, in favor of Sobcon into a report and recommendation.  The Bankruptcy Court there said:

> On July 17, 2012, Porter Capital filed its Opposition to Defendant's [Sobcon's] Motion to Dismiss. (AP Doc. 61).  The Opposition provided, in pertinent part, that:
>
> 5. . . . *The overlapping nature of the matters in the case are not mere "common issues of fact": the existence or nonexistence of claims against Sobcon, in effect, means the existence or nonexistence of liabilities against the Debtor, thus affecting the amount of money in the estate*.
>
> 7. The nature of the suit and the **inextricably intertwined** questions of law and fact between the claims against Sobcon and the claims against the Debtor militate in favor of this Court's exercising its jurisdiction. . . .
>
> (AP Doc. 61, ¶¶ 5 & 7).  Defendant's Motion to Dismiss was denied on September 4, 2012. (AP Doc. 71).

(citations omitted).  (emphasis added). (italics provided by this court).

It was Porter that first described the issues of Porter vis-á-vis Haley, and of Porter vis-á-vis Sobcon, as "overlapping" and as "inextricably intertwined".  It was not until Sobcon's motion to dismiss was denied by the Bankruptcy Court that Porter amended its complaint to allege for the first time that some of the materials sold by Haley to Sobcon and itemized in disputed invoices had actually been delivered to Sobcon, allegedly making Sobcon subject

4

to double liability for those unpaid invoices under ALA. CODE § 3-9A-406. The thus amended complaint, as against both Haley and Sobcon, reiterated Porter's claim that Haley's debt was non-dischargeable. Both Porter and Sobcon fully participated as adversarial parties in the "case" (singular). They were represented by counsel in all of the jointly conducted proceedings. After hearing the dispute as one inseparable "case", the "inextricably intertwined" issues of Haley's dischargeability and of Sobcon's liability were decided on October 9, 2013, one finally, and one, as it has turned out, purportedly. On February 14, 2014, the Bankruptcy Court granted Porter's post-judgment motion that pointed out for the first time that its claim against Sobcon was a non-core proceeding over which the Bankruptcy Court had no final jurisdiction under Article III of the Constitution. The Bankruptcy Court thereupon amended its judgment of October 9, 2013, and reduced its finding of no liability by Sobcon to a report and recommendation to the district court that it find in favor of Sobcon.

On February 14, 2014, the Bankruptcy Court was acknowledging the effect of *Stern v. Marshall*, which first pronounced that Article III overrides contrary statutory authority and forbids a bankruptcy court from entering a final judgment in a non-core proceeding. The Bankruptcy Court could not be asked, and was not asked, to address the hypothetical question (no longer

hypothetical) of whether its findings and conclusions in the **core** proceeding, over which it had jurisdiction, were *res judicata* of the non-core proceeding.  Nothing, however, prevents an Article I judge's prior opinion from precluding an Article III judge, like this one, from deviating from the findings in the prior Article I opinion **if all elements for *res judicata* were present in the prior proceeding.**

### *Res Judicata*

Understandably, the Bankruptcy Court, in light of *Stern v. Marshall*, eschewed authority to rule finally on Porter's complaint against Sobcon.  But, as stated, the Bankruptcy Court was a court of competent jurisdiction in the core proceeding, and to the extent its ruling included findings of fact and conclusions of law necessary to the decision in both the core proceeding and in the non-core proceeding now before this court, the findings and conclusions in the prior core proceeding have preclusive effect and are decisive in this court.

During the hearing conducted by this court on March 21, 2014, the court directed the parties to brief more thoroughly the question of the preclusive effect of the final judgment of dischargeability on the instant proceeding.  On April 25, 2014, Sobcon responded to the court's question, citing cases from the Ninth Circuit, the Sixth Circuit, the Second Circuit, and the Tenth Circuit, all of which clearly hold that *res judicata* does apply

under circumstances like these. But, Sobcon strangely and erroneously cited *I.A. Durbin, Inc. v. Jefferson Nat. Bank*, 793 F.2d 1541 (11th Cir. 1986), for a minority proposition among the Circuits that *res judicata* does not apply in the Eleventh Circuit under such circumstances. This court respectfully, but strongly, disagrees with Sobcon's reading of *I.A. Durbin*. The Eleventh Circuit in that case was dealing with the possible preclusive effect of a contempt proceeding conducted by a bankruptcy court. The Eleventh Circuit unsurprisingly held:

> Collateral estoppel or issue preclusion forecloses relitigation of an issue of fact or law that has been litigated and decided in a prior suit. There are several prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one involved in the prior litigation; (2) the issue must have been actually litigated in the prior suit; (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in that action; and (4) the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding.

(citations omitted).

*Id.* at 1549.

The only reason *res judicata* was found not to apply in *I.A. Durbin* was that the bankruptcy proceeding had not contained the essential elements for *res judicata*. *Id.* The Eleventh Circuit certainly did not mean to treat a bankruptcy court as a court whose opinions could never provide a basis for *res judicata*.

Because in the instant case the parties are the same as in the core proceeding in the Bankruptcy Court, the doctrine of *res judicata* precludes the relitigation of those same issues in this court. Proving that *Stern v. Marshall* did not abrogate the universal rule for applying *res judicata* in this context, the Eleventh Circuit, as recently as April 7, 2014, held as follows in *Brown v. United States*:

> In *Stern*, the Supreme Court held that a bankruptcy court violated Article III when it entered final judgment on a bankruptcy estate's permissive state-law counterclaim against a creditor **when the counterclaim was not resolved in the process of ruling on the creditor's proof of claim**.

(emphasis added).
\_\_\_\_\_ F.3d \_\_\_\_, 214 WL 1344463 at *15 (11th Cir. Apr. 7, 2014). In the instant situation, Porter's adversary proceeding against Sobcon was (except, perhaps, for Porter's claim under ALA. CODE § 7-9A-406 involving three invoices) (and to borrow a variation of the above-quoted phrase from *Brown*) "resolved in the process of ruling on the creditor's claim of non-dischargeability". In *Brown*, the Eleventh Circuit was clearly recognizing the obvious, namely, that an issue that has been adjudicated by a bankruptcy court to conclusion in a core proceeding cannot be relitigated in a subsequent non-core proceeding between the same parties. This is exactly what has happened in the instant case. The core finding that Haley was not guilty of fraud, and thus that his debt was

discharged, not only precludes Porter from pursuing his claim of $86,141.52 against Haley, but from pursuing his claim for the same $86,141.52 against Sobcon. If the Bankruptcy Court had found Haley's debt to be non-dischargeable and if Haley had paid his debt to Porter, Porter's claim against Sobcon would be moot. They were, in legal and practical effect, the same alleged debt. They were, as Porter admitted, "inextricably intertwined".

### The Report and Recommendation

Even if this court is not precluded by *res judicata* from imposing a money judgment in favor of Porter and against Sobcon, this court, upon a mandatory *de novo* consideration of the entire record, including the objections filed by Porter, reaches the same conclusion the Bankruptcy Court purportedly reached in the adversary proceeding, and then downgraded into a report and recommendation.

On page 12 of its original opinion in the "case", the Bankruptcy Court found:

> There was no evidence introduced as to the general record keeping practiced by Porter Capital, but that is to be expected as the only record keeping that really matters is that relating to proof that an invoice submitted for payment was legitimate. An employee of Porter Capital testified that Porter Capital required proof of delivery before it would advance money on a submitted invoice. The employee further testified that an employee of Porter Capital would call and verify delivery on every invoice it received. **While this may be the preferred policy at Porter Capital, this court finds that it was not the actual practice. First, if an employee called to verify every invoice, how could Debtor possibly submit**

> **fraudulent invoices for payment?  Porter Capital would have caught any fraudulent invoices before it advanced money, and this lawsuit would not have been filed.**

(emphasis added).

On page 18 of the Bankruptcy Court's original opinion in the "case", the Bankruptcy Court found:

> Porter Capital asserts that if the Disputed Invoices are not fraudulent, then they must be legitimate and Sobcon must have received the materials invoiced.  This assertion by Porter Capital is not correct.  **Porter Capital had the burden of proving that the Disputed Invoices were fraudulent.  It did not do so.  By failing to prove that the Disputed Invoices were fraudulent, Porter Capital did not prove that materials invoiced in the Disputed Invoices were delivered.**

(emphasis added).

On page 20 of the Bankruptcy Court's original opinion in the "case", the Bankruptcy Court found:

> After examining the evidence admitted and reviewing the testimony at trial, this court is left with two equally plausible scenarios: Either Debtor is lying and Sobcon never ordered the materials invoiced on the Disputed Invoices; or the employees of Sobcon are lying and Sobcon received the materials invoiced on the Disputed Invoices.  **Because neither scenario is more likely than the other, Porter Capital has failed to meet its burden of proving that the materials invoiced on the Disputed Invoices were actually delivered to Sobcon.  Therefore, Sobcon does not owe Porter Capital for the 14 disputed Invoices where delivery is an issue.**

(emphasis added).

On page 23 of the Bankruptcy Court's original opinion in the "case", the Bankruptcy Court found:

> Sobcon did not receive the notification required by ALA. CODE § 7-9A-406 prior to the payment on invoices 32128,

32149, and 32151 being sent to Custom Steel.  Pursuant to ALA. CODE § 7-9A-406, Sobcon could discharge its obligation on invoices 32128, 32149, and 32151 by payment to Custom Steel, which Sobcon did.  Therefore, Sobcon has no obligation to further pay Porter Capital for invoices 32128, 32149, and 32151.

## **Conclusion**

Because this court, on the evidence presented to the Bankruptcy Court, reaches the same conclusions the Bankruptcy Court now recommends, the objection of Porter to the report and recommendation is OVERRULED, and the Bankruptcy Court's opinions of October 9, 2013, and February 14, 2014, are hereby ACCEPTED and ADOPTED as the opinion of this court, that is, to the extent the same issues have not been decided by an application of the doctrine of *res judicata*.

A separate final judgment will accordingly be entered.

DONE this 8th day of May, 2014.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE